ALEJANDRO CORCHADO, Plaintiff and Appellee, *v.* RAMÓN FERNÁNDEZ CARBALLO, CARLOS MANUEL FERNÁNDEZ, and MARYLAND CASUALTY CO., Defendants and Appellants the first two.

No. 185.        Decided April 15, 1963.

*Gaspar Gerena Bras* for appellants. *Brown, Newsom & Córdova, Pablo R. Cancio, Iván Díaz de Aldrey,* and *Juan F. Esteves* for appellee. *Rivera Zayas, Rivera Cestero & Rúa* for Maryland Casualty Company.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

MR. JUSTICE RIGAU delivered the opinion of the Court.

Defendants, Dr. Ramón Fernández Carballo and his son Carlos Manuel Fernández, were owners of a building devoted to the rental business of commercial premises and offices, situated in Santurce, Puerto Rico. Plaintiff, a Certified Public Accountant, had his office in said building. While walking along the center hall of the floor where he had his office, plaintiff fell and suffered two fractures of his right arm.

He filed a complaint and after a trial the Superior Court granted the complaint as to defendants Fernández and his

son, and dismissed it as to codefendant Maryland Casualty Co. ordering defendants Fernández to pay solidarily the amount of $10,000 to plaintiff. It ordered plaintiff to pay the costs of the Maryland Casualty Co.

Among others, the trial court made the following findings of fact:

"6. . . . the defendant Ramón Fernández Carballo, as owner, and codefendant Carlos Manuel Fernández, as Manager, negligently kept the aforesaid hall of the San Río Building in a hazardous condition for the persons who had to use it since said floor was extremely slippery by reason of the excessive, improper and negligent application of floor wax to said hall by an employee of defendant Ramón Fernández Carballo. This condition was of plaintiff's knowledge.

"7. While said hall was in such hazardous condition . . . plaintiff left his office of certified public accountant to go to the men's room and upon going down the hall and taking a few steps he slipped and fell suffering serious physical injuries, the proximate and direct cause of said fall and of the resulting injuries and damages suffered by plaintiff being the negligence of defendants Ramón Fernández Carballo and Carlos Manuel Fernández, in negligently keeping said hall in the aforesaid slippery condition, there being in said accident no fault or negligence on the part of plaintiff.

"8. The evidence presented and admitted in the case has conclusively shown that defendants were in the habit of using wax for the maintenance of said floor. Wax may be applied on an asphalt tile (the type of floor existing in the place of the accident) in such a manner as not to create a slippery condition to the extent of constituting a hazard to the persons walking on the floor, provided it is applied according to the instructions indicated on the product. If it is applied in excess, as was done in this case, a hazardous condition is created because the surface becomes too slippery.

"9. On previous occasions other persons had suffered falls on the second floor on account of the slippery condition of the floor.

"10. Witness Flavia Toledo, among other persons, had told defendant Ramón Fernández Carballo, on several occasions prior

to the accident, that the condition of the floors of the building, and specifically the second floor, were hazardous due to excessive application of wax.

"11. Plaintiff himself, Alejandro Corchado, had personally complained to defendant Ramón Fernández Carballo in connection with the aforesaid condition of the floor. To this defendant Ramón Fernández Carballo had answered that the cleaning of the floors had to be accomplished in any way. Defendants Ramón Fernández Carballo and Carlos Manuel Fernández negligently disregarded the complaints and warnings received by them in connection with the slippery condition of the second floor of the San Río Building, without taking any steps to remedy the situation.

"12. As a result of the aforesaid fall, plaintiff bled considerably and suffered two fractures in his right arm, a compound or open fracture of the inferior third of the right radius and another fracture of the inferior third of the right cubital bone. He was taken, shortly after the accident, to San José Hospital where Dr. Espinosa, an orthopedic specialist, proceeded to clean the wound and to perform a manipulative reduction of the fractures, since said fractures were wholly dislocated.

"13. On March 23, 1955, Dr. Espinosa performed a surgical operation on plaintiff consisting of an open reduction of both fractures. The cubital bone was fixed by the insertion of an intramedullary nail which he still carries and an open reduction of the fracture of the inferior third of the radius was also performed, fixing the fragments with wires which plaintiff still carries.

"14. As a result of the aforesaid fractures plaintiff suffers a manifest deformity in his right arm, with deviation of the right hand, limitation in the wrist of his right hand, and a marked limitation of the pronation and supination movements, that is, rotation of the hand. Furthermore, plaintiff suffers a permanent partial disability of his right arm and hand, which limits the normal functioning of said hand.

"15. Plaintiff's physical disability is of a permanent nature and to remove the intramedullary steel nail which he still carries in the cubital bone, it will be necessary to submit him to a new operation."

Defendants ask this Court to review the judgment and assign eight errors. The first three and the seventh challenge the weighing of the evidence made by the trial court. The fourth states that the court erred "in holding that plaintiff was not bound to notify the defendants in writing of any apparent hazardous condition within the leased premises according to the terms of the contract between the parties." The fifth assignment alleges that the court erred in holding that plaintiff did not assume the risk of the injuries suffered by him since he had previous knowledge of the alleged slippery condition of the floor. (The accident took place prior to the amendment of § 1802 of the Civil Code, introduced by Act No. 28 of June 9, 1956, 31 L.P.R.A. § 5141.)

The sixth assignment alleges the court erred in holding that defendant, Dr. Ramón Fernández Carballo, knew of the accident when he purchased the insurance policy from Maryland Casualty Co. and in relieving said company from liability. The seventh error indicates that the court erred in not holding that the deformity and the permanent partial disability suffered by plaintiff in his right arm were the result of a fracture previously suffered by plaintiff. The eighth error alleges that the amount of the judgment is excessive and confiscatory.

■ We have carefully examined the lengthy transcript of the evidence, the testimony, the documentary evidence, and we have read the briefs submitted by counsel for plaintiff and for defendants Fernández and for the Maryland Casualty Co. We are remiss to support a judgment against a person because he keeps his floor clean and shiny (we would be less remiss if the cause of the accident had been a dirty and neglected floor) but although, as ordinarily happens in these cases, the evidence herein is contradictory, the findings of the trial court are fully supported by the evidence and since said findings are neither manifestly erroneous nor arbitrary, we should accept them. For this

reason we believe that the first three assignments and the seventh were not committed.

Although defendant Dr. Fernández Carballo testified that he ordered the floor to be waxed only once or twice a year, several witnesses—persons who worked in that building—testified that the floor of the hall was waxed once, twice, and three times a week. They testified that too much wax was applied and that the hall was almost always extremely slippery and dangerous. The experts explained the correct manner of applying the wax. A thin coating is applied (it is liquid wax) and after it dries it is polished by hand or machine. The witnesses of the plaintiff testified that the boy who waxed the floor spread on the floor part of the liquid from a can and then, without waiting for it to dry, he passed a cloth or mop, leaving the floor covered with an extremely thick and slippery film. Defendant, Dr. Fernández Carballo, denied that that was the procedure used and testified that he or his son supervised the manner in which the wax was applied. It was incumbent on the trial court to settle this conflict in the evidence and it accepted the version which it deemed most possible and deserving of credit. We have no reason for disturbing this weighing.

Likewise, findings 14 and 15 are not erroneous. It is true that plaintiff had suffered a fracture in that same arm when he was an adolescent. One of the two medical experts stated that a radiological study revealed that that first fracture left some deformity but the evidence that the fractures sustained as a result of the fall which gave rise to this suit caused greater deformity in the arm and a definitive permanent partial disability was neither destroyed nor overcome.

The fourth and fifth errors were not committed. Plaintiff, defendants' tenant, did not assume any risk since in walking along the hall he was in the exercise of his right as lessee, *Palmer* v. *Barreras*, 73 P.R.R. 266, 270 (1952). The hazard of the slippery floor was not so apparent, extra-

ordinary or obvious that a person of reasonable prudence would have refused to walk on the hall until the shine or slipperiness was removed. *Cf. Goose* v. *Hilton Hotels*, 79 P.R.R. 494, 498 (1956), nor was any work or repair being done there to make manifest the hazard for any person traveling thereon, *Ugarte* v. *Aboy*, 52 P.R.R. 579, 581 (1938). The trial court did not err in holding that the lease contract referred to the "leased property", that is, to plaintiff's office. That was why the contract did not cover the situation at bar since the accident occurred in the hall. We are not deciding that a clause of that nature in the contract is valid; we are merely indicating that it did not cover the present case. It is the duty of the lessor to provide for its tenants an adequate and reasonably safe means to reach their offices and apartments, *Prado* v. *Quiñones*, 78 P.R.R. 300, 329 (1955). As we said in *Santaella* v. *Licari*, 83 P.R.R. 855 (1961):

"It is a well-settled principle, consistently followed by the authorities, that when a building consists of several apartments or rooms and they are leased to different tenants, the entrances, foyers, staircases and halls of common use are, except when otherwise provided, in the possession and under the control of the landlord and, consequently, the responsibility for their condition and safety rests on the latter. It is his duty to see that said facilities of common use are kept in such conditions as to offer security to the tenants as well as to the persons who legitimately enter the building."

See also 2 Harper & James, The Law of Torts 1516 (1956); Prosser, Law of Torts 471 (1955 2d ed.); 25 A.L.R.2d 444.

■ Neither was the sixth error committed; the finding of the court was fully supported by the evidence. See, for example, the following excerpt of the testimony of Dr. Fernández Carballo, Plaintiff's Exhibit 12, pp. 11, 12:

"Q. Do you carry an insurance policy for public liability in that building, yes?

A. I have one with the Maryland Casualty Co.

Q. Since what date do you have that policy?

A. I do not remember.

Q. In connection with that accident, since when did you have it, before or after the accident? Doctor, as to Corchado's accident?

A. At the time of Corchado's accident I was not covered; that is why I have to answer personally.

Q. When you say 'not covered', do you mean that you had no policy, or that it had expired or was past due?

A. I had it with another company, but was careless and failed to pay it. Then I took it with the Maryland.

Q. Do you remember, as to the accident, when you took it, the policy, with the Maryland, whether it was weeks, months, or shortly after the accident?

A. The same day.

Q. After the accident?

A. Yes, after the accident. Then I went to look for the policy and I realized that I had allowed the other policy to expire through negligence.

Q. With what company did you have the other policy?

A. I do not remember.

Q. Do you have it?

A. I have it. I would have to look for it. I looked for it and it was due, then I took it with the Maryland.

Q. You do not remember the company?

A. I do not remember. I have carried policies with so many companies.

Q. Was it a company from Puerto Rico?

A. Yes, sir.

Q. You examined that policy after the accident?

A. I looked for it and I saw that it had expired and I made out a new one. I knew beforehand that the accident of Corchado was my personal affair; I had to answer the complaint on my own."

From the testimony of witness Luis Martínez, Investigator and Adjuster of the Maryland Casualty Co. (T.E. pp. 255–256), we copy the following:

"Q. What happened?

A. When he told me that the son of the doctor had helped him to get up when the accident, as soon as I finished I returned to the office of the doctor. Then the doctor was there.

Q. Dr. Fernández Carballo?

A. Yes. Then I told him that his son and he had knowledge at the time of the accident and that he had gone to the company to take out a policy knowing that an accident had occurred. Then I asked him for the policy and he told me 'you're right' and returned it to me.

Q. Was another policy issued to him?

A. We issued another policy, instead of the seventh it was dated the eighth.

Q. Of March?

A. Of March.

Q. Then he admitted to you that you were right?

A. He admitted it to me and returned it to me.

Q. He admitted that he knew of the accident when he took out the policy and he returned the policy to you?

A. Yes, sir."

Hence, the error of relieving the insurance company of liability was not committed. 132 A.L.R. 1325.

The last and eighth error was not committed. In view of the nature of the injuries and the permanent partial disability produced by said injuries we do not feel justified in disturbing the amount granted.

The judgment rendered in this case on June 15, 1959 by the Superior Court, San Juan Part, will be affirmed.